# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**STEVEN E BURGAUER, as Trustee of
the Paul D. Burgauer Revocable Living
Trust, dated May 25, 1987 and as
amended, an Irrevocable Trust**

      **Plaintiff,**

**v.**                                  **Case No: 5:23-cv-708-PRL**

**PREMIER TRUST, INC.,**

      **Defendant.**

---

## ORDER

Pending before the Court is the defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(7) or, in the alternative, to transfer under 28 U.S.C. § 1404(a). (Doc. 11). Plaintiff has filed a response in opposition. (Doc. 23). For the reasons stated below, the motion is due to be denied.

### I.   BACKGROUND

On November 7, 2023, Plaintiff, Steven E. Burgauer, as Trustee of the Paul D. Burgauer Revocable Living Trust, dated May 25, 1987, and as amended, an Irrevocable Trust ("Trust"), filed a complaint in state court against Defendant, Premier Trust, Inc. ("Premier" or "Defendant"), asserting eight counts related to breach of fiduciary duty or trust. (Doc. 1-1). About a month later, on December 7, Premier removed the action to this Court, based on diversity jurisdiction. (Doc. 1 at 2).

According to the allegations in the complaint, on May 25, 1987, the plaintiff's father, Paul Burgauer ("Settlor"), created the Trust. (Doc. 1-1 at ¶ 2). On January 28, 2003, Settlor

died in Illinois, and under the terms of the Trust, it became irrevocable. *Id.* Also, upon Settlor's death, the Trust created a "Marital Trust" for the benefit of Margaret Burgauer, Settlor's wife, and Plaintiff's mother.[1] *Id.* ¶¶ 1, 2, 4. Plaintiff succeeded Settlor as trustee of the Trust and the Marital Trust. *Id.* at ¶ 2. This dispute involves the Marital Trust. *Id.* at ¶ 4 ("The Trust also created a residuary trust that is not the subject of this lawsuit").

In 2012, Plaintiff moved from Illinois to Sumter County, Florida, and began conducting administrative activities in connection with the Marital Trust from Florida. (Doc. 1-1 at ¶¶ 2, 5–6, 14). The same year, 2012, Plaintiff, as trustee, used the assets from the Marital Trust to buy a parcel for a single-family residence in Sumter County, Florida. *Id.* at ¶ 14. Plaintiff then built "a single-family residence . . . on the parcel using Marital Trust funds, and in 2015, his mother, Margaret, moved from Illinois to live in the residence." *Id.* The residence (the "Florida Property") was located "in Sumter County, at 12375 NE 48th Circle in Oxford, Florida[.]" *Id.* at ¶ 14. "The Marital Trust was listed as the title owner on the warranty deed for the Florida Property." *Id.* at ¶ 15.

At some point, Margaret apparently moved from Florida to Nevada. Although "the Marital Trust does not, nor did it ever, own any Nevada assets[,]" "[o]n March 19, 2018, Margaret filed a petition against [Plaintiff] as trustee of [the] Marital Trust in [the] District Court of Clark County, Nevada." *Id.* at ¶¶ 16–17. "In her petition, Margaret sought to assume jurisdiction of the Marital Trust, remove [Plaintiff] as the trustee of the Marital Trust, appoint

---

[1] In one instance in the defendant's motion to dismiss, it claims that "James O. Burgauer, the brother of [Plaintiff], . . . is also a beneficiary of the Marital Trust." (Doc. 11 at 19). The defendant does not make this argument elsewhere (when claiming that Plaintiff's mother is the beneficiary of the Marital Trust). Further, the defendant fails to cite authority in the pleadings, filings, trust documents, or Nevada proceedings to support its assertion that the plaintiff's brother was also a beneficiary of the Marital Trust. Indeed, the Nevada Trial Court determined that "the Marital Trust's **sole beneficiary** [was] Margaret Burgauer." (Doc. 23 at 12 n.7 (emphasis added) (quoting Doc. 23-6 at 4)).

a successor trustee, and impose personal liability on [Plaintiff] under Nevada law, as well as for an accounting." (Doc. 1-1 at ¶ 17).

In response, Plaintiff "made a limited entry of appearance and moved to dismiss for lack of personal jurisdiction over him because [he] did not have the requisite minimum contacts with Nevada." *Id.* at ¶ 18. "Margaret opposed the motion, arguing the trial court had personal jurisdiction because [Plaintiff]'s actions as trustee had harmed her as a Nevada resident, that is, [Plaintiff] had allegedly stopped paying income to her from the trust, converted Marital Trust assets, and made libelous statements about her in correspondence to her and others." *Id.* at ¶ 18. "On June 22, 2018, the Nevada trial court denied [Plaintiff]'s motion to dismiss based on personal jurisdiction." *Id.* at ¶ 19. According to Plaintiff, "[i]n doing so, the trial court utterly failed to conduct the constitutionally required minimum contacts analysis that [Plaintiff] requested and to which he was entitled." *Id.* Further, according to Plaintiff, "[t]he trial court's dubious rationale in denying his motion to dismiss was that the court had *in rem* jurisdiction because Margaret resided in Nevada." (Doc. 1-1 at ¶ 19). Plaintiff "consistently objected to the trial court's lack of personal jurisdiction throughout the case." *Id.* at ¶ 20.

"The trial court also issued a temporary restraining order against [Plaintiff] as trustee, prohibiting him from selling or transferring the Marital Trust assets." *Id.* at ¶ 21.[2] "The trial court never revisited the temporary restraining order over the more than three years that the case dragged on, and as such, the order was permanent in all but name." *Id.* "Most important, on **February 25, 2019**, the trial court, *without conducting an evidentiary hearing*, granted

---

[2] For ease of reference, the Court liberally quotes the allegations as to the Nevada court proceedings.

Margaret's motion to remove [Plaintiff] as [t]rustee and for the appointment of a temporary trustee to be determined later." (Doc. 1-1 at ¶ 22). "The trial court stated in its order that it was removing [Plaintiff] as trustee not because he had 'done anything wrong,' but because the court 'was concerned about possible commingling' of the [Marital] Trust's assets." *Id.* "The court also stated: '[o]nce ***the neutral and independent trustee*** is in place, everything shall be transferred to the new trustee, trustee can perform an accounting for the [c]ourt to determine whether there is any net income to be distributed to Margaret . . . and whether Margaret . . . is entitled to the net income of the . . . Marital Trust only.'" *Id.*

"On . . . May 1, 2019, after a hearing, the trial court appointed [Defendant] as the 'temporary trustee.'" (Doc. 1-1 at ¶ 23; Doc. 11 at ¶ 4d).[3] Plaintiff "appealed the temporary order removing him as trustee, and the order appointing [Defendant] as the temporary trustee." (Doc. 1-1 at ¶ 24). "On June 3, 2020, the Nevada Court of Appeals denied his appeal from both orders on the basis [that] it did not have jurisdiction over nonfinal orders." *Id.* "However, . . . the appellate court, in a footnote, went out of its way to 'remind' the trial court to conduct the . . . constitutionally required minimum contacts analysis as to the court's personal jurisdiction over [Plaintiff]:"

> Although we make no comment on the personal jurisdictional issues raised by [Plaintiff], we remind the district court that a determination as to whether Nevada courts can exercise personal jurisdiction over [Plaintiff] requires the court to assess whether he has sufficient minimum contacts with Nevada, and we anticipate that undertaking this analysis will facilitate our future review of any appealable determination issued by the district court.

---

[3] The defendant argues that the Nevada trial court confirmed it as trustee of the Marital Trust on May 13, 2019, and that order determined "that the [d]efendant would have all of the powers vested in a trustee under Nevada law, NRS Chapters 163 and 165." (Doc. 11 at ¶ 4e).

*Id.* Plaintiff alleges that "[d]espite the appellate court's instruction, the trial court still failed to conduct the required assessment to determine if [he] had minimum contacts with Nevada." *Id.*

According to Plaintiff, "[l]ater, *[Defendant] and Margaret* jointly moved for [Plaintiff] to transfer the Florida Property back to the Marital Trust so it could be sold[.]" (Doc. 1-1 at ¶¶ 25, 36.i.b., 37). Plaintiff alleges that Defendant, "purportedly acting on behalf of the Marital Trust, was the seller of the Florida Property, and as such, [it] submitted a ['false'] closing affidavit" which in part stated, "***[t]here are no actions or proceedings now pending in any State or Federal Court to which Seller is a party***[.]" *Id.* at ¶¶ 40–48 (emphasis in original).[4] Then, Plaintiff alleges, Defendant and Margaret "jointly moved for . . . the amount of $117,000.00 from the sale proceeds be distributed to Margaret and the remainder distributed to Nevada attorneys." (Doc. 1-1 at ¶¶ 25, 37).[5] "The district court granted the motion, and [Plaintiff] had no choice but to transfer the Florida Property back to the Marital Trust." *Id.* at ¶¶ 25, 37.

Further, Plaintiff alleges that "*[Defendant] and Margaret* jointly moved for an order to hold [Plaintiff] in contempt for violating the temporary orders issued over two years before,

---

[4] In Count III, the plaintiff alleges that "[t]he Florida Property['s] . . . appraised value on the date of sale . . . was $360,000.00." (Doc. 1-1 at ¶ 65). However, according to Plaintiff, Defendant "sold the Florida Property for only $215,000.00, far below its market value." *Id.* at 66.

[5] Plaintiff alleges that Defendant's "petition for [d]istribution of [t]rust [p]roperty filed in the trial court on December 9, 2019, sought the trial court's approval to allow [Defendant] to pay . . . from the sale of the Florida Property: . . .

| | |
|---|---|
| Net Proceeds of Florida [Property]: | $215,000… |
| Distribution to Margaret: | $117,000 |
| Distribution to [Defendant's] Legal Counsel Edwards Law Firm[:] | $5,000 |
| Distribution to [Defendant's] Legal Counsel Kirson & Fuller, PLLC[:] | $4,000 |
| Distribution to Margaret's Legal Counsel Marquis Aurbach Coffing[:] | $72,809.02[.]" |

(Doc. 1-1 at ¶ 37).

and the court, over [Plaintiff]'s opposition, granted their motion, ordering him to pay $500 per purported violation in addition to awarding attorney's fees to Margaret." *Id.* at ¶¶ 26, 36. "Margaret then moved for this order to be entered as a judgment, and on . . . December 14, 2020, the trial court entered its judgment holding [Plaintiff] in contempt." *Id.* at ¶ 26. "Now that he had an appealable judgment, [Plaintiff] could finally appeal as a matter of right and have the Nevada Court of Appeals review the personal jurisdiction[] issue." *Id.*

Significantly, "[o]n September 23, 2021, the Nevada Court of Appeals reversed the trial court's order denying [Plaintiff]'s motion to dismiss, holding the trial court did not have personal jurisdiction over [Plaintiff], and remanded to the trial court to return the Marital Trust to the status quo before the litigation began in Nevada, and to vacate its orders, including removing him as trustee and holding him in contempt." (Doc. 1-1 at ¶ 27) (citing *In the Matter of the Trust of Paul D. Burgauer Revocable Living Trust*, 495 P.3d 531 (Nev. App. 2021)).

This was upheld by the Nevada Supreme Court. Specifically, "Margaret petitioned for review of the appellate decision, and on December 15, 2022, the Nevada Supreme Court reversed the trial court, holding Margaret failed to provide *prima facie* evidence of [Plaintiff]'s minimum contacts with Nevada, reasoning that Margaret's claimed harm due to [Plaintiff]'s actions did not show [Plaintiff] intentionally availed himself to personal jurisdiction in Nevada, and also remanded the case for the trial court to vacate all of its orders to the extent feasible." (Doc. 1-1 at ¶ 28) (citing *In the Matter of the Trust of Paul D. Burgauer Revocable Living Trust*, 521 P.3d 1160 (Nev. 2022)).

"On remand, [Plaintiff] petitioned the trial court to 'unwind' or vacate the trial court's orders, and on October 2, 2023, the trial court granted the petition, stating: '[a]ll of the prior orders entered by the [c]ourt are void *ab initio* and are vacated *nunc pro tunc* to the date

Margaret's original petition was filed,' that is, March 19, 2018." (Doc. 1-1 at ¶ 29). "In the same order, the trial court dismissed the case with prejudice." *Id.* This new suit followed.

## II.   LEGAL STANDARDS AND DISCUSSION

As an initial matter, the defendant repeatedly argues throughout its motion that, at the time of its appointment, the Marital Trust did not own the Florida Property. *See, e.g.*, (Docs. 11 at 2–3, 11, 13–14; 11-2). It claims that the Marital Trust lost ownership when the plaintiff, as trustee, executed a quit claim deed on October 30, 2017, that transferred the Florida Property "to 12375 Holding, LLC., a Wyoming limited liability company[,]" that the plaintiff formed. *Id.* Likewise, the defendant points to December 14, 2017, when the plaintiff, as trustee, "signed a $100,000 line of credit promissory note, with Burgauer-Albrecht Holding, Inc., a Wyoming corporation ('Burgauer-Albrecht'), that was secured by a mortgage granted by the Marital Trust on the" Florida Property. (Doc. 11 at 3) (grammatical alterations).

However, Defendant concedes that the Florida "Property was transferred by 12375 Holding to [it] . . . as [s]uccessor [t]rustee, on November 14, 2019, as a result of the Nevada Court Orders [sic]." (Doc. 11 at 14). Further, the Nevada trial court expressly granted the defendant's motion "to compel [Plaintiff] to return the [Florida] Property [(therein called the 'Trust Property')] to the Marital Trust, free and clear of any encumbrances that [the plaintiff] caused to be recorded on the [Florida] Property." (Doc. 11-4 at 1). Also, the express language of the 2017 quit claim deed states that: "**[t]he Grantee LLC is wholly owned by the Grantor Trust**, therefore, **the Grantee is considered a conduit entity** to which real property is being conveyed without full consideration by the Grantor[.]"[6] (Doc. 11-2 at 1) (emphasis added).

---

[6] The complaint also alleges that "[t]he Marital Trust was listed as the title owner on the warranty deed for the Florida Property." (Doc. 1-1 at ¶ 15).

Thus, the Marital Trust owned the Florida Property when the defendant was appointed trustee until its sale, considering: (1) the defendant, as trustee, sold the Florida Property; (2) the Nevada trial court permitted that sale; (3) the Nevada Trial court expressly granted the defendant's request to have the Florida Property returned to the trust as "Trust Property[;]" (4) the express language of the 2017 quitclaim deed; and (5) the defendant's failure to cite any authority supporting its argument that the Marital Trust did not own the Florida Property at the time it was appointed trustee until its sale.

### A. Personal Jurisdiction Exists Under Florida's Trust-Specific Long-Arm Statute and Comports With Due Process

Next, under Rule 12(b)(2), the defendant moves to dismiss, asserting that this Court lacks personal jurisdiction over it, because it is a Nevada entity without Florida contacts.

### 1. Rule 12(b)(2) Legal Standards

Determining whether the Court has personal jurisdiction requires a two-part analysis. First, the Court must determine whether jurisdiction exists under the forum state's long-arm statute. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). Second, the Court must ascertain whether there exist sufficient minimum contacts between the defendant and the forum state to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 855 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Florida's long-arm statute must be strictly construed, and the plaintiff has the burden of proving facts sufficient to "clearly justify" use of the statute. *Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 891 (11th Cir. 1983).

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint to determine whether the plaintiff has met his

burden of establishing a *prima facie* case of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). If the plaintiff establishes a *prima facie* case of jurisdiction, "the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Structural Panels, Inc. v. Tex. Aluminum Indus., Inc.*, 814 F. Supp. 1058, 1064 (M.D. Fla. 1993). If the defendant challenges the plaintiff's assertions by affidavit or other proof, then the plaintiff must also "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986).

### a.  Florida's Trust-Specific Long-Arm Statute

Florida's "trust-specific long-arm statute" authorizes an exercise of personal jurisdiction "so long as the trust's principal place of administration is in Florida." *McEwen v. Strickland*, No. 2:19-cv-880-FtM-38NPM, 2020 WL 495220, at *2 (M.D. Fla. Jan. 30, 2020).[7] According to Plaintiff, the relevant provisions provide:

> **(2) Personal jurisdiction.--**
>
> > (a) Any trustee, trust beneficiary, or other person, whether or not a citizen or resident of this state, who personally or through an agent does any of the following acts related to a trust, submits to the jurisdiction of the courts of this state involving that trust:
> >
> > > 1. Accepts trusteeship of a trust having its principal place of administration in this state at the time of acceptance.
> > >
> > > . . .
> > >
> > > 5. Commits a breach of trust in this state, or commits a breach of trust with respect to a trust having its principal

---

[7] Plaintiff's complaint asserted that "[t]his Court has jurisdiction over [Defendant] because [Defendant] committed breaches of trust and breaches of fiduciary duties in connection with the Martial Trust in Sumter County, Florida, as part of a common plan or scheme." (Doc. 1-1 at ¶ 8) (citing § 736.0202(2)(a)5, Fla. Stat. (2023)).

> place of administration in this state at the time of the
> breach.
>
> . . .
>
> 7. Performs any act or service for a trust having its principal
> place of administration in this state.
>
> (b) A court of this state may exercise personal jurisdiction over
> a trustee, trust beneficiary, or other person, whether found
> within or outside the state, to the maximum extent permitted
> by the State Constitution or the Federal Constitution.

Fla. Stat. § 736.0202; (Docs. 1-1 at ¶ 8; 23 at 3–4). When the trust instrument does not validly

designate the principal place of administration, "the principal place of administration . . . is

the trustee's usual place of business where the records pertaining to the trust are kept or, if the

trustee has no place of business, the trustee's residence." Fla. Stat. § 736.0108(2).

### 2. Rule 12(b)(2) Discussion

Prior to addressing the long-arm statute, Florida law requires the Court to first consider

"whether the allegations of the complaint state a cause of action." *McEwen*, 2020 WL 495220,

at *2 (citations omitted). To state a claim for breach of fiduciary duty, the plaintiff must allege:

(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) that such breach was

the proximate cause of the plaintiff's damages. *Gracey v. Eaker*, 837 So. 2d 348, 353 & n.4 (Fla.

2002) (citations omitted). Here, the complaint alleges, and Defendant does not appear to

argue otherwise for purposes of its motion to dismiss, the existence of fiduciary duties, that

the defendant breached those duties, and that the breaches were the proximate cause of the

plaintiff's damages. *See, e.g.*, (Doc. 1-1 at ¶¶ 56–62). Thus, the complaint states a cause of

action, such that the Court will now address Florida's trust-specific long-arm statute.

### a. Personal Jurisdiction Exists Under Florida's Trust-Specific Long-Arm Statute

Here, the Court agrees with the plaintiff that it has personal jurisdiction over the defendant under Florida's trust-specific long-arm statute, Fla. Stat. § 736.0202(2)(a)(1).[8] The plaintiff has proven facts to "clearly justify" the application of the statute, i.e., that when the defendant accepted trusteeship of the Marital Trust, its principal place of administration was in Florida. (Docs. 23 at 4–5; 23-1 at 2). While the defendant claims that the Marital Trust was an Illinois trust, Plaintiff alleges and submits a declaration that the Marital Trust became a Florida trust when he moved to Florida in 2012 and began "administering the Marital Trust from [his] Florida residence[.]" *See* (Doc. 1-1 at ¶¶ 2–9, 11; Doc. 23-1 at ¶ 7). There appears to be no dispute that (after 2012) Plaintiff administered the Marital Trust, for the time he was the trustee, from Florida.

Indeed, after 2012, the plaintiff attests that the Marital Trust was administered from Florida "except for the period when the Nevada trial court wrongfully removed [him] as Trustee of the Marital Trust and appointed [Defendant] . . . in [his] place." (Doc. 23-1 at ¶ 7). Although Defendant asserts that it was uninvolved in the Florida Property's sale, the residential sale and purchase contract for the Florida Property demonstrates otherwise. *See* (Doc. 23-3); *see* discussion *supra* Section II. Likewise, contrary to the defendant's contention, the Marital Trust owned the Florida Property at the time it was appointed trustee, until the defendant allegedly sold it as trustee. (Doc. 1-1 at ¶¶ 25, 41).

---

[8] Because the Court finds that it has jurisdiction under subsection (2)(a)(1), it does not address Plaintiff's other argument that it also has personal jurisdiction over Defendant under Fla. Stat. § 736.0202(2)(a)(5). (Doc. 1-1 at ¶ 8).

### b. Sufficient Minimum Contacts Between Defendant and Florida Exist to Satisfy Due Process Clause of the Fourteenth Amendment

Because personal jurisdiction exists under Florida's trust-specific long-arm statute, the Court must now determine whether personal jurisdiction comports with the Constitution. *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1274 (11th Cir. 2022). Simply stated, due process prohibits the exercise of personal jurisdiction over a nonresident defendant unless its contacts with the state are such that it has fair warning that it may be subject to suit there. *Id.* at 1275. In specific jurisdiction cases like this one, the Court examines whether (1) the plaintiff's claims "arise out of or relate to" one of the defendant's contacts with the forum state; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of "fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Plaintiff bears the burden of establishing the first two requirements. *See id.* If Plaintiff carries that burden, Defendant must then make a "'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

Here, Plaintiff's claims are based on Defendant's intentional conduct directed into Florida. Plaintiff alleges that Defendant, after being wrongfully appointed temporary trustee, sold the Florida Property. Indeed, all of Plaintiff's claims arise from the defendant's sale of the Florida Property. *Cf. Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1311–12 (N.D. Ga. 2021) (exercising personal jurisdiction over non-resident defendant did not offend due process where defendant prepared documents related to transactions involving real property in

Georgia, and all alleged wrongful acts pertained to Georgia-transaction and were purposely directed at plaintiffs in Georgia), *with Duncan v. O'Shea*, 376 F. Supp. 3d 115, 120–25 (D. Me. 2019) (conveying real property in Maine insufficient to establish personal jurisdiction over Texas-based law firm when transfer of property occurred in Texas, deed conveyance executed in Texas, documents related to deed conveyance all prepared in Texas, and firm only mailed deed from Texas to Maine for recording).

Defendant sold the Florida Property using a Florida closing agent and title insurance. (Docs. 23-3 at 1–2, 9; 23-4 at 1; 23-5 at 2; 23-9; 23-10 at 6). Defendant also contended that, at the time of the sale, it was the only person in possession of the Florida Property, and that only it had an ownership interest in the Florida Property. (Doc. 23-5 at 1–2). Finally, the defendant purportedly executed a "false" closing affidavit when selling the Florida Property, averring that "[t]here are no actions or proceedings now pending in any State or Federal Court to which Seller is a party." (Doc. 1-1 at ¶¶ 41–45). "[A] nonresident defendant's single tortious act can establish purposeful availment without regard to whether the defendants had any other contacts with the forum state." *Del Valle*, 2022 WL 17101160, at *5.

Although the defendant has filed an affidavit attesting to it never having an office location in Florida; not conducting business in Florida; never maintaining a Florida bank account, agents, or representatives; never paying taxes in Florida; not being on file with the Florida Division of Corporations, taking actions and making distributions in Nevada; signing documents (and having them notarized and witnessed) in connection with the Florida Property sale in Nevada; and "only administer[ing] trusts pursuant to Nevada trust laws[;]" the "alleged wrongful acts all pertain to a transaction that took place in [Florida] that was purposefully directed to [a] Plaintiff[] located in [Florida], not some other state outside of the

forum." (Doc. 11-11 at 1–2); *Lechter*, 565 F. Supp. 3d at 1311–12; *see Donald Who, LLC v. Ayesha Vines, U.S. Bank, N.A.*, No. 1:17-CV-291-SCJ-LTW, 2018 WL 4839787, at *4 (N.D. Ga. July 16, 2018), *report and recommendation adopted*, No. 1:17-CV-0291-SCJ, 2018 WL 4839205 (N.D. Ga. Aug. 2, 2018) (finding exercise of personal jurisdiction over out-of-state defendants comported with due process because one defendant previously owned property in the state, and thus "'invoked the benefits and protections of Georgia's law of real property,' including, as an incident of ownership, the right to sell and/or transfer the Property. [And the other defendant] . . . took advantage of Georgia foreclosure laws when it sold the property at a foreclosure sale. [Further, the complaint alleged that] . . . both Defendants executed and recorded inaccurate legal documents conveying the Property located in Georgia, and the dispute arises out of the inaccuracies in those legal documents").

Accordingly, the quality and nature of Defendants' actions were not so "random, fortuitous, or attenuated" that Defendants could not have reasonably anticipated being haled into a Florida court. *Elandia Int'l, Inc. v. Koy*, 690 F. Supp. 2d 1317, 1338 (S.D. Fla. 2010) ("Due Process clause is not violated when a court exercises jurisdiction over a defendant's intentional tortious conduct, committed outside of the forum state but calculated to cause injury in the forum state, because the defendant must have reasonably anticipated being haled into court in the forum state regarding those actions"). Thus, the defendant's motion to dismiss under Rule 12(b)(2) for a lack of personal jurisdiction is **denied**.

### B.  There are no Necessary and Indispensable Parties to Join

Next, the defendant argues that the complaint should be dismissed for a failure to join necessary and indispensable parties. *See* (Doc. 11 at 13); Fed. R. Civ. P. 12(b)(7) & 19. The Court disagrees.

### 1.  Rule 12(b)(7) and Rule 19 Legal Standards

Under Rule 12(b)(7), there "is a 'two-step inquiry.'" *State Farm Mut. Auto. Ins. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1331 (S.D. Fla. 2017) [hereinafter *Performance Orthopaedics*] (quoting *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011)). First, the movant "must establish [that] the absent party is a 'required' party as defined by Federal Rule of Civil Procedure 19(a)." *Performance Orthopaedics*, 278 F. Supp. 3d at 1331 (quoting *Molinos Valle Del Cibao*, 633 F.3d at 1344); *see also People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*, No. 8:16-CV-2899-T-36AAS, 2018 WL 7253076, at *7 (M.D. Fla. Oct. 10, 2018), *report and recommendation adopted*, No. 8:16-CV-2899-T-36AAS, 2019 WL 245343 (M.D. Fla. Jan. 17, 2019) [hereinafter *PETA*]. An absent party is a "required party" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1); *Santiago v. Honeywell Int'l, Inc.*, 768 F. App'x 1000, 1004 (11th Cir. 2019); *Dominguez v. True Help Servs., Inc.*, No. 6:18-cv-1656-Orl-40EJK, 2019 WL 5110646, at

*2 (M.D. Fla. Aug. 1, 2019); *PETA*, 2018 WL 7253076, at *7. Also, at step one, the movant must establish that the required party is subject to service of process and that their joinder will not deprive the court of subject matter jurisdiction. *Maletta v. Woodle*, No: 2:20-cv-1004-JES-MRM, 2021 WL 2856632, at *2 (July 8, 2021).

At step two, if the court determines that the absent party is a required party, and "[i]f . . . joinder is feasible, '[m]isjoinder of parties is not a ground for dismissing an action,' and the [c]ourt may add the party at any time." *PETA*, 2018 WL 7253076, at *7 (quoting Fed. R. Civ. P. 21). If joining the "required party" is not feasible, then the court applies the factors in Rule 19(b) to determine whether "in equity and good conscience," the action should proceed without the required party.[9] *PETA*, 2018 WL 7253076, at *7 (quoting Fed. R. Civ. P. 19(b)); *see Maletta*, 2021 WL 2856632, at *2 (quoting *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (citation omitted)).

---

[9] The factors Rule 19(b) lists are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

## 2.  Rule 12(b)(7) and Rule 19 Discussion

Here, at step one, the defendant has failed to show that any of the "absent parties" are "required" parties.[10]  The defendant has not shown that these absent parties prevent the Court from "accord[ing] complete relief among existing parties[.]" Fed. R. Civ. P. 19(a)(1)(A). Seven of the eight claims asserted are premised on the defendant's purported breach of fiduciary duties in its role as trustee of the Marital Trust. (Doc. 1-1 at 14–20). As Plaintiff argues, Defendant is "the only trustee capable of being sued for breach" and the defendant has not identified a cause of action that could be asserted against the absent parties. (Doc. 23 at 10–12 & n.7 (citing Doc. 23-6 at 4)).

Likewise, the absent parties do not appear "required" for the only non-breach related claim, Count I, for restitution for the sale of the Florida Property. (Doc. 1-1 at 13). As the plaintiff argues, where there is joint and several liability among multiple parties, complete relief can be granted with respect to any one of them.[11] (Doc. 23 at 10) (first quoting *Temple v. Synthes Corp. Ltd.*, 498 U.S. 5, 7 (1990); then citing *Gen. Refractories Co. v. First State Inc.*, 500 F.3d 306, 314 (3rd Cir. 2007)). The defendant fails to cite authority for its proposition that the

---

[10] The defendant claims that the following are "absent parties" in this action: 12375 Holding, Burgauer-Albrecht, and "the Recipients" that were distributed proceeds from the Florida Property's sale. (Doc. 11 at ¶¶ 18–24).

[11] While the parties fail to address the issue, the Court notes that in some instances, Florida has apparently abolished joint and several liability. Fla. Stat. § 768.81(3); *see Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1320 (11th Cir. 2017) (finding "required" party analysis applied to products liability action when Florida had disallowed joint and several liability for such actions under Fla. Stat. § 768.81); *see also Leuchtman v. Fisher-Price, Inc.*, No. 3:23cv7955-TKW-ZCB, 2024 U.S. Dist. LEXIS 54473, at *9 (N.D. Fla. Mar. 18, 2024). However, it appears that breach of fiduciary duty is an intentional tort rather than a claim sounding in negligence. *Fed. Deposit Ins. Corp. v. Hall*, No. 8:14-CV-834-T-24TGW, 2014 WL 6909464, at *4 n.2 (M.D. Fla. Dec. 9, 2014) ("Breach of fiduciary duty is an intentional tort in Florida") (first citing *Mehlenbacher ex rel. Asconi Corp. v. Jitaru*, No. 6:04–cv–118–Orl–22KRS, 2005 WL 4585859, at *12 (M.D.Fla. June 6, 2005); then citing *Davis v. Monahan*, 832 So.2d 708, 711 (Fla.2002)).

absent parties must be named for the Court to accord Plaintiff complete relief or for its proposition that the absent parties must be named for it to recover a contribution from any of the absent parties if it is found liable on any of the counts. Finally, the defendant "do[es] not contend that [it] . . . would be unable to pay the amount sought . . . [if it was] found liable." *Performance Orthopaedics*, 278 F. Supp. 3d at 1333 (first citing *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1039 (11th Cir. 2014); then citing *Molinos Valle Del Cibao*, 633 F.3d at 1345).

Further, as the plaintiff argues, none of the absent parties "claim[ed] an interest relating to the subject of [this] action[,]"and thus they are not "required" parties under Rule 19(a)(1)(B). Fed. R. Civ. P. 19(a)(1)(B);[12] (Doc. 23 at 11 & n.6, 12 ("no one is claiming an interest in the Marital Trust because there is nothing left to claim"). Because none of the absent parties are claiming an interest, their absence will not "impair or impede" the protection of their (nonexistent) interests. Fed. R. Civ. P. 19(a)(1)(B)(i).

In fact, according to the plaintiff, some of the absent parties are no longer in existence to even claim an interest in this action. For example, "to moot the issue" of whether 12375 Holding and Burgauer-Albrecht should be named as plaintiffs,[13] the plaintiff states that

---

[12] Because none of the recipients are named as parties, the defendant is not "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).[12] The defendant has not explained what cause of action might compel the Recipients to return anything and any holding in this action "that distributions were improper, . . . . would not be binding on the recipients[.]" (Doc. 23 at 11). However, the plaintiff submits that if the defendant "is concerned about inconsistent rulings, [it] can attempt to add [Margaret and her counsel], and if [it] is concerned that [the plaintiff] might face inconsistent rulings, that is not [the defendant]'s argument to make." (Doc. 23 at 12). These individuals will not be joined in the action at present, because in addition to the defendant failing to demonstrate they are required parties, the defendant has not provided the Court with causes of action it believes could be appropriately asserted against them.

[13] The defendant claims that 12375 Holding and Burgauer-Albrecht are the real parties-in-interest when it comes to the Florida Property, as the former mortgage-holder and prior owner in title to the defendant. (Doc. 11 at ¶¶ 18–22).

Burgauer-Albrecht "assigned all of its potential claims against [the defendant] to the Marital Trust." (Doc. 23 at 13; Doc. 23-8). Further, "12375 Holding was dissolved in 2019, causing the Marital Trust to succeed to any claim 12375 Holding had against [the defendant]." (Doc. 23 at 13). Also, the plaintiff provides the declarations of "[t]he former manager and former sole member of 12375 Holding . . . to confirm and bind 12375 Holding to the Marital Trust's succession of all claims that 12375 Holding has or had against [the defendant]." (Doc. 23 at 13; Doc. 23-7). Thus, 12375 Holding and Burgauer-Albrecht "have no possible claims against [Defendant] and cannot be deemed indispensable." (Doc. 23 at 13 (citing *McNeeley v. Berk*, 2011 WL 5358057, \*5 (M.D.Fla. 2011)).

Finally, at step one, the defendant has failed to identify whether the absent parties are subject to service of process and whether their joinder would destroy diversity jurisdiction. Indeed, the defendant simply states "[i]t is not clear whether the joinder of 12375 Holding, Burgauer-Albrecht, and the Recipients would be feasible in the Middle District of Florida as they may not be subject to personal jurisdiction in the state of Florida." (Doc. 11 at ¶ 31). Thus, the defendant has not met its burden at the first step of the inquiry. *See Maletta*, 2021 WL 2856632, at \*2 ("Defendants have failed to address whether any of the other signatories are subject to service of process or whether their joinder would destroy diversity jurisdiction. Therefore, Defendants have failed to establish the first element of the two-prong test").

Accordingly, the defendant's motion to dismiss under Rule 12(b)(7) and Rule 19 for a failure to join necessary and indispensable parties is **denied**.

### C. Venue is Proper in the Middle District of Florida

Finally, the defendant alternatively moves to transfer this action to the United States District Court for the District of Nevada under 28 U.S.C. § 1404(a), arguing it is a more convenient forum. (Doc. 11 at 19).

### 1. 28 U.S.C. § 1404(a) Legal Standards

Under Title 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party seeking transfer under § 1404(a) has the burden of establishing that the transferee forum is more convenient and that transfer is appropriate. *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.,* 761 F. Supp. 2d 1322, 1326 (M.D. Fla. 2010) (quoting *In re Ricoh Corp.*, 870 F.2d 570, 573 (1989)). Ultimately, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir. 1996) (internal quotation marks omitted).

In determining whether to transfer venue under § 1404(a), the court must engage in a two-step inquiry. *Ali v. Hudson Ins., et al.,* No. 3:15-cv-816-J-34PDB, 2016 WL 1090018, at *2 (M.D. Fla. March 21, 2016). First, the court must determine whether the alternative venue is one in which the action could originally have been brought. *Id.* Second, the court must consider "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." *Id.* The Eleventh Circuit has identified nine factors for the court to consider:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling

witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted).

## 2. 28 U.S.C. § 1404(a) Discussion

### a. Defendant Fails to Show That This Action "Might Have Been Brought" in the District Court of Nevada

First, the defendant fails to establish that this action "might have been brought" in the forum it proposes—the District Court of Nevada. 28 U.S.C. § 1404(a). An action might have been brought in a proposed transferee court if: "(1) the court has subject matter jurisdiction, (2) venue is proper, and (3) the defendant is amenable to process." *Andersons, Inc. v. Enviro Granulation, LLC*, No. 8:13-CV-3004-T-33MAP, 2015 WL 2025590, at *6 (M.D. Fla. Apr. 30, 2015). Here, the defendant does not explain whether the District Court of Nevada would have subject matter jurisdiction over this action. *See* (Doc. 23 at 15) (pointing out that Defendant did not address "whether the action might have been brought in the proposed transferee court . . . in a meaningful manner"). Moreover, the defendant fails to cite to the federal venue statute or indicate that it specifically applies here in arguing that venue is proper in Nevada. Finally, the defendant does not state (but the Court will assume, for purposes of this Order) that it is amenable to process in Nevada.

Accordingly, Defendant has not shown that this action "might have been brought" in the District Court of Nevada.

### b. Plaintiff's Choice of Forum is not Outweighed by Other Considerations

Second, even if the defendant had shown that this action "might have been brought" in the District Court of Nevada, it fails to meet its burden to show that Plaintiff's choice of

forum—the Middle District of Florida—is "clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). The defendant has not demonstrated that transferring would be for the convenience of the parties and witnesses, and in the interests of justice.

### i.    Weight Accorded to Plaintiff's Choice of Forum

Here, substantial deference is accorded to Plaintiff's choice of forum, because he continues to reside in the Middle District of Florida, where he initiated this action, and as he argues, the "locus of operative facts involving [Defendant] is in Florida." (Doc. 1-1 at ¶¶ 6; Doc. 23 at 17); *cf. Rigby v. Flue-Cured Tobacco Co-op Stabilization Corp.*, No. 7:05-CV-122 (HL), 2006 WL 1312412, at *5 (M.D. Georgia, May 11, 2006) (choice of forum entitled to less weight where Plaintiff did not reside within district and majority of operative events occurred outside of district).

### ii.    Convenience of the Parties

Defendant argues that the District Court of Nevada is more convenient for it because it is a Nevada corporation. Defendant acknowledges that Florida may be the most convenient forum for Plaintiff, who resides here currently. The plaintiff opposes transfer, and he would be the best judge of which district is more convenient for him.

### iii.    Locus of Operative Facts

Here, a reading of the Complaint makes clear that all of Plaintiff's claims are predicated on specific allegations of the defendant improperly selling the Florida Property and distributing funds from its sale, actions directed at the plaintiff in the Middle District of Florida. While the Nevada court's appointment of the defendant as trustee of the Marital Trust, was "a necessary event, in a causal sense," because it gave rise to the defendant having

the ability to sell the Florida Property, the Nevada court's appointment is not "an event giving rise to [Plaintiff's] claim because it was not itself wrongful." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003);[14] *see NuTek Int'l, Inc. v. Moxley-West*, No. 3:13-CV-494-J-34PDB, 2014 WL 12623811, at *5–8 (M.D. Fla. Mar. 26, 2014) (finding venue improper where plaintiff failed to allege that out-of-state defendants committed breach of fiduciary duty in Florida nor alleged facts that acts or omissions occurred in Florida, instead plaintiff claimed venue was proper because defendants occasionally had unrelated business meetings in Florida).

Count I is a claim against the defendant for restitution for the sale of the Florida Property based on erroneous orders in the Nevada proceedings that the defendant "should have known . . . were subject to being unwound, given [Plaintiff]'s still-pending challenge to personal jurisdiction." (Doc. 1-1 at ¶¶ 49–55). Count II claims Defendant breached its fiduciary duties in selling the Florida Property by "rushing headlong to request jointly with Margaret for the trial court's permission to sell the Florida Property[,]" instead of preserving the status quo of the Marital Trust assets; and it "transferred the assets from the sale outside of the Marital Trust, instead of, at minimum, keeping the sales proceeds within the Marital Trust." *Id.* at ¶¶ 56–62. Count III claims that the defendant breached its fiduciary duty by "rushing headlong to request jointly with Margaret for the trial court's permission to sell the

---

[14] In *Jenkins*, the Eleventh Circuit cited with approval the Eighth Circuit's analysis in *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995). In *Woodke*, the Eighth Circuit denied the argument that venue in a breach of contract action was appropriate in the jurisdiction where the product at issue was manufactured and where the "agreement between the plaintiff and defendant was executed," because "[t]hese activities [had] an insubstantial connection with the kinds of events that give rise to a claim," and while "[i]t is true that manufacturing the [products] was a necessary event, in a causal sense, to an attempt to pass them off," the court held that manufacturing was not "an event giving rise to [the plaintiff's] claim because it was not itself wrongful." *Id.* at 985–86.

Florida Property[,]" and selling the Florida Property for $215,000 "far below its market value" as appraised "on the date of the sale, which was $360,000." (Doc. 1-1 at ¶¶ 63–68).

Count IV alleges that the defendant breached its fiduciary duty because "[b]y selling the Florida Property and distributing to Margaret . . . $117,000 and paying Margaret's attorneys' fees in the amount of $72,809.02 from the sale proceeds, [it] distributed principal, not income, to Margaret, in direct violation of the Second Article, Paragraph 2(C)." (Doc. 1-1 at ¶¶ 69–73). Count V claims Defendant breached its fiduciary duty by paying Margaret's and its own "attorneys' fees and costs either in whole or in part from the Marital Trust[,]" when "the Nevada Litigation did not benefit the Marital Trust as a matter of law." (Doc. 1-1 at ¶¶ 74–78).

Count VI also claims Defendant breached its fiduciary duty by paying "Nevada attorneys' fees from the proceeds of the sale of the Florida Property, which was a Marital Trust asset[,]" when "[t]he Marital Trust was harmed because [it] squandered Marital Trust income and principal by selling the Florida Property and then diverting the proceeds to its own and Margaret's attorneys." *Id.* at ¶¶ 79–83. Count VII claims Defendant breached its fiduciary duty by causing the plaintiff to incur attorney's fees and costs by "fail[ing] to be independent and neutral and instead becoming an active facilitator of Margaret's lawsuit against" the plaintiff and forcing him "to defend against [its] actions." *Id.* at ¶¶ 84–98. Finally, Count VIII claims the defendant committed a breach of trust by "selling the Florida Property; selling the Florida Property for under its market value; distributing the Florida Property's sale proceeds outside the marital trust; paying the net income beneficiary, Margaret, Marital Trust principal from the proceeds of the Florida Property in direct violation of the Marital Trust's terms; paying Margaret's Nevada attorneys from the [sale] proceeds . . . of the Florida

Property with no benefit to the Marital Trust or its beneficiaries as a matter of law; and paying [its]' Nevada attorneys from the [sale] proceeds . . . of the Florida Property with no benefit to the Marital Trust or its beneficiaries as a matter of law." (Doc. 1-1 at ¶¶ 90–97).

Accordingly, the alleged wrongful activity of the Defendant directly affected the Plaintiff and the Marital Trust in the Middle District of Florida, where the plaintiff resided, administered the Marital Trust, and the Marital Trust owned property here, and the resulting harm would have occurred to them here as well. While the defendant was appointed trustee by a Nevada court, it does not shift the locus of operative facts away from this District, which has more connections to the alleged wrongs in this case. Thus, this factor weighs against transfer.

### iv.     Convenience of Witnesses

The Middle District of Florida gives "great weight" to the convenience of witnesses. *Suomen Colrize Oy v. DISH Network, LLC*, 801 F.Supp.2d 1334, 1338 (M.D. Fla. 2011). However, its significance is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party. *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F.Supp.2d 1322, 1327 (M.D. Fla. 2010) (citing *Mason v. Smithkline Beecham Clinical Labs.*, 146 F.Supp.2d 1355, 1361–62 (S.D.Fla.2001)). In weighing the convenience of witnesses, "the court must qualitatively evaluate the materiality of the testimony that the witness[es] may provide" in the case and may not just compare the number of witnesses in each forum. *Gonzalez v. Pirelli Tire, LLC*, No. 07-cv-80453, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (internal quotation marks and citations omitted).

Here, Defendant identifies non-party witnesses as "[v]arious persons who were employed by" it, Margaret (Plaintiff's mother), James (Plaintiff's brother), and Marquis Aurbach Coffing, the law firm that that initiated the lawsuit to remove Plaintiff as trustee and represented Margaret "during those proceedings." (Doc. 11 at 19–20). Defendant asserts, without support, that "[a]ll of the witnesses that will testify as to the actions taken by the Defendant as Trustee and the reasons and justifications for why those actions were taken all reside in Nevada." (Doc. 11 at 19). Defendant does not provide a specific location for the non-party witnesses or identify the names of the non-party witnesses besides the plaintiff's mother, plaintiff's brother, and Marquis Aurbach Coffing. Accordingly, this factor is neutral.

### v. The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

This factor examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial. Here, the defendant claims, without specifics, that "[a]ll of the seller side of the sale and closing documents associated with the sale of the [Florida] Property were signed in Nevada." (Doc. 11 at ¶ 35). However, as the defendant's argument implicitly acknowledges, much of this evidence would be in the form of easily transferable paper records. Thus, this factor weighs against transfer.

### vi. Familiarity with the Governing Law

Here, the defendant claims, without support, that "[t]his case will involve a significant amount of discussion and analysis of Nevada Trust law" because its "actions . . . were governed by Nevada law, not Florida or Illinois law." (Doc. 11 at ¶ 34). However, as stated previously, the defendant accepted trusteeship of a trust being administered out of Florida. Such acceptance makes the application of Florida law appropriate here. And, regardless, the complaint's causes of actions all involve Florida law. Finally, the Court agrees with the

plaintiff that the defendant's argument as to the application of issue or claim preclusion appears erroneous, as he could not genuinely assert these claims in the Nevada court while also objecting to the court's exercise of personal jurisdiction over him. (Doc. 23 at 19–20). Thus, this factor does not weigh in favor of transfer.

In light of the presumption in favor of the plaintiff's choice of forum—and given that Plaintiff currently resides in Florida, where he alleges he was injured by Defendant—Defendant has not met its burden to establish the propriety of transferring this action to Nevada. Accordingly, Defendant's motion to transfer this action in the alternative is **denied**.

### III.   CONCLUSION

Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction and failure to join necessary and indispensable parties is **DENIED**. Likewise, the defendant's motion in the alternative to transfer this action to the United States District Court for the District of Nevada is **DENIED**.

**DONE** and **ORDERED** in Ocala, Florida on June 13, 2024.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties